## ROGERS v. PAVING DIST. NO. 1 OF CITY OF EUREKA SPRINGS, CARROLL COUNTY, ARK., et al.

### No. 10492.

Circuit Court of Appeals, Eighth Circuit.
July 15, 1936.

S. L. White, of Little Rock, Ark., for appellant.

A. J. Russell, Jr., of Eureka Springs, Ark. (Claude A. Fuller, of Eureka Springs, Ark., and John R. Duty, of Rogers, Ark., on the brief), for appellees.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from an order and decree of the trial court dismissing appellant's complaint against appellees the paving district and its commissioners on the ground that the state chancery court had first acquired jurisdiction of the matter involved.

The suit was commenced July 24, 1935, in the federal court based on the ground of diversity of citizenship.

The facts alleged in the record are somewhat as follows: Appellee, Paving District No. 1 of Eureka Springs, Ark., was organized in 1929. On March 7, 1929, it executed $214,500 of negotiable bonds, and, to secure payment thereof, it also executed to the American Southern Trust Company, as trustee, a mortgage or pledge of its assessment of benefits.

On September 25, 1929, it executed a second issue of bonds for $10,000, also secured by a similar mortgage or pledge to the same trustee.

The American Southern Trust Company became insolvent. The mortgages provided that if the trustee should resign, refuse to act, or cease to exist, the holders of a majority of the bonds might appoint a new trustee.

On April 3, 1935, the defendant district received from the state of Arkansas certain state aid certificates or bonds of the face value of $168,844.54, a donation by the state to the district to be used in liquidating the outstanding bonded indebtedness of the district in so far as said bonded indebtedness represented construction or continuation of a state highway by the district in Eureka Springs. According to the provisions of said district's bonds hereinbefore mentioned, the said state aid bonds were pledged to the trustee for the benefit of the owners of the defendant's bonds.

On June 14, 1935, appellant Rogers was appointed trustee under the first mortgage, by a majority of the bondholders, to succeed the American Trust Company.

On July 24, 1935, Rogers brought this suit in the lower court to foreclose the mortgage of which he was trustee, alleging that the district had defaulted in payment of bonds and interest since 1931 in the total amount of $59,740, and praying: (1) For judgment in that amount for the matured bonds and interest; and judgment for the balance of unmatured bonds, amounting to $167,500; (2) for a decree of foreclosure; (3) that the court award against the commissioners a mandatory order commanding them to pay over to appellant all funds on hand and directing them to institute suit against all delinquent taxpayers; (4) for a restraining order enjoining the commissioners from disposing of the state bonds, and that the same be delivered to a paying agent to be held for the benefit of the appellant and appellee district; (5) for all other equitable relief.

Meanwhile, on November 22, 1932, the commissioners held a meeting, the minutes of which state that as the bondholders under the first mortgage had made no effort to appoint a successor trustee, and as the owners of the second issue bonds had appeared before the commissioners and requested that they appoint Dick Simpson as the new trustee, the American Southern Trust Company was therefore removed, and Dick Simpson designated as trustee.

On November 23, 1932, Dick Simpson, as trustee, filed a complaint in the state court asking for the appointment of a receiver for the district. He alleged that the state of Arkansas, through its highway commission, had agreed to pay one-half of the pavement, and issued certificates on November 4, 1929, for the sum of $85,286, and on July 18, 1929, for the sum of $192,958.67, thereby assuming all outstanding indebtedness for paving alone, leaving the city taxpayers to pay for rebuilding the water and sewer mains only; that by reason of the receipt of said certificates, and the agreement of the state to pay its obligation, the district did not levy as much tax

as usual; that it had $5,000 on hand, but had no money with which to pay its maturing bonds; that the state of Arkansas was unable to meet its obligations, and the said bonds would be in default.

The commissioners waived time to answer, and entered their appearance in this suit on the next day, November 24, 1932; and on said last-mentioned date the court appointed Andrew J. Russell, Jr., as receiver. He was directed to take charge of the assets and business of the district; to collect delinquent assessments, etc.

The only written report filed by the receiver was dated January 5, 1935, in which he stated that he had paid out $31.55, and had a balance on hand of $367.72.

On August 19, 1935, the receiver, Andrew J. Russell, Jr., was made a party defendant in this action brought by Rogers as trustee, and voluntarily entered his appearance.

On September 7, 1935, appellees filed a motion to dismiss the complaint in the last-mentioned suit on the ground that the federal court had no jurisdiction because of the receivership in the state court.

Appellant Rogers filed a response to said motion to dismiss, stating that the appointment of Dick Simpson as trustee was void and of no effect, so far as appellant's rights were concerned; that the state court proceedings were ex parte, and the jurisdiction of that court affected only the parties in said proceedings; that the receiver appointed therein had remained inactive, and that the bondholders had been deprived of any payments on principal of the bonds for almost five years; that at no time had the receiver collected or attempted to enforce payment of delinquent taxes, and had not reduced to his custody the state bonds amounting to $168,844.54.

Appellant further alleged that the relief prayed for by him was not in conflict with the receivership proceedings, in so far as he prayed for judgment; for a decree of foreclosure of the mortgage; and in so far as he endeavored to reach property still in the possession of the district, which had never been reduced to the receiver's custody.

On October 7, 1935, the lower court entered an order sustaining appellees' motion to dismiss the complaint on the ground that the state court had already acquired jurisdiction.

The subject of conflict of jurisdiction between federal and state courts has been the source of much discussion and has given rise to many decisions in the courts.

It will not be necessary in the case at bar to do more than advert to a few principles which we deem well established.

In the often-cited case of Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257, Chief Justice Marshall, speaking of the jurisdiction of the federal court, said: "It is most true, that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction, if it should. * * * We cannot pass it by, because it is doubtful. * * * We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution."

In the case of Harkin v. Brundage, 276 U.S. 36, at page 55, 48 S.Ct. 268, 275, 72 L.Ed. 457, the court uses the following language: "In this country, in which in every state we have courts of concurrent jurisdiction under the federal and the state authority, it is of the highest importance that conflict of jurisdiction should be avoided. It can only be avoided by forbearance and comity, and by enforcing upon the parties and counsel engaged the utmost good faith and the fullest disclosure in one jurisdiction with reference to what are the exact facts relevant to litigation in a corresponding case in the other. This is especially true with respect to receiverships."

In the case of Riehle v. Margolies, 279 U.S. 218, at page 223, 49 S.Ct. 310, 312, 73 L.Ed. 669, the court, speaking of receivers appointed by a federal court, lays down the following rule: "But the appointment of the receiver does not necessarily draw to the federal court the exclusive right to determine all questions or rights of action affecting the debtor's estate. Calhoun v. Lanaux, 127 U.S. 634, 637–639, 8 S.Ct. 1345, 32 L.Ed. 297. This is true, a fortiori, as to the subject-matter of a suit pending in a state court when the receivership suit was begun. Compare Haines v. Carpenter, 91 U.S. 254, 23 L.Ed. 345. The rule that, when the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it have once attached the right cannot be restrained by proceedings in any other court, applies to protect the jurisdiction of

the court unless the case is within some recognized exception to section 265 of the Judicial Code [28 U.S.C.A. § 379]."

See, also, Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L. Ed. 226, 24 A.L.R. 1077; Desha County v. Crocker First Nat. Bank, 72 F.(2d) 359 (C. C.A.8); Davies v. Mills Novelty Co., 70 F.(2d) 424 (C.C.A.8); Ackerman v. Tobin, 22 F.(2d) 541 (C.C.A.8).

In Penn General Casualty Co. v. Pennsylvania, supra, 294 U.S. 189, at page 195, 55 S.Ct. 386, 389, 79 L.Ed. 850, the court said: "Where the judgment sought is strictly in personam, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other. See Buck v. Colbath, supra [3 Wall. 334, at page 342 [18 L.Ed. 257]; Kline v. Burke Construction Co., 260 U.S. 226, and cases cited at pages 230, 231, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L.R. 1077. But, if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. * * * The principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."

In the Desha County Case, 72 F.(2d) 359, at page 362, the court said: "It is clear that as to actions in personam two courts, state and federal, may have concurrent jurisdiction; but neither excludes the jurisdiction of the other. Each has the jurisdictional power to proceed. The mere pendency of the action in one court does not exclude the power of the other to exercise its jurisdiction."

In the Ackerman Case, 22 F.(2d) 541, at page 544 the court said:

"It is well settled that the pendency of a suit upon a cause of action in a state court will not sustain a plea of lis pendens to a suit upon the same cause of action in the federal court; and the converse is also true, that the pendency of an action in the federal court will not sustain a plea of lis pendens to a suit upon the same cause of action in the state court. Kline v. Burke Const. Co., supra; Ogden City v. Weaver (C.C.A.) 108 F. 564, 568.

"The rule is different where, after a suit is brought in the federal court affecting the custody of property, or at some stage of the proceeding may affect the custody of property, a suit of like nature is subsequently brought in the state court, and vice versa. In such cases it is well settled that the court which first acquires jurisdiction of the res, actual or constructive, is entitled to proceed to effectuate the purpose of the action without let or hindrance on the part of any other court of co-ordinate jurisdiction."

In the Davies Case, 70 F.(2d) 424, at page 426, the court said: "Even the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. In McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 505, 54 L.Ed. 762, the court said: 'The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the Federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case.'"

To the same general effect, see Lubbock Hotel Co. v. Guaranty Bank & Trust Co. (C.C.A.) 77 F.(2d) 152; Boynton v. Moffat Tunnel Imp. District (C.C.A.) 57 F. (2d) 772; Equitable Trust Co. v. Denney (C.C.A.) 24 F.(2d) 169; Brown v. Crawford (D.C.) 254 F. 146; Empire Trust Co. v. Brooks (C.C.A.) 232 F. 641.

■ Under the foregoing authorities, which are but a few of the many which might be cited, we think it is clear that the jurisdiction existing in the state court did not prevent the federal court from exercising its jurisdiction in the case at bar, to the extent that such exercise of jurisdiction did not interfere with the possession by the state court through its receiver of the res involved in the litigation, and that such exercise of jurisdiction accorded due and proper regard to the proceedings had in the state court.

Just how far such exercise of jurisdiction by the federal court should extend will depend upon a variety of circumstances which may arise. It is sufficient for present purposes to say that it will extend to the prosecution of his claim to judgment by plaintiff in the case at bar.

It follows from the foregoing that the trial court erred in dismissing the complaint in the instant case.

The decree is accordingly reversed and the case remanded, with instructions for reinstatement of the complaint, and for further proceedings not inconsistent with the views herein expressed.